UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-08-157-B-W |
| | ) | |
| LEVAR CAREY | ) | |

**DETENTION ORDER**

Concluding that the Government sustained its burden to demonstrate by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community, the Court grants the Government's motion for Levar Carey's pre-trial detention.

**I.    BACKGROUND**

On August 13, 2008 a federal Grand Jury indicted Levar Carey for one count of conspiring to make false statements in acquisition of firearms, a Class D felony, one count of aiding and abetting the making of a false statement in acquisition of firearms, a Class C felony, and one count of possession of a firearm by a felon, a Class D felony. *Indictment* (Docket # 3).  Following his arrest, Mr. Carey made his initial appearance on September 4, 2008 and was ordered temporarily detained under 18 U.S.C. § 3142(f)(2). *Order of Temporary Detention Pending Hearing Pursuant to Bail Reform Act* (Docket # 29).  A detention hearing was held pursuant to 18 U.S.C. § 3142(f) on September 11, 2008.

**II.    LEGAL STANDARDS**

Section 3142 sets forth the standards to determine whether a person charged with a federal crime may be detained pending trial.  *United States v. Dillard*, 214 F.3d 88, 90-

91 (2d Cir. 2000). Under the Bail Reform Act, paragraph 3142(a)(4) specifies that, for defendants arrested on criminal charges, pretrial detention is available only pursuant to subsection (e). Subsection (e) states that a person may be detained if the judicial officer finds after a hearing under subsection (f), that no condition or combination of conditions will reasonably assure the "appearance of the person as required" or the "safety of . . . the community." 18 U.S.C. § 3142(e). Subsection (f) allows a detention hearing before a judicial officer if the defendant has been charged with an offense that "involves the use or possession of a firearm."[1] *Id.* § 3142(f). The Government bears the burden of supporting its motion "by clear and convincing evidence," *id.* § 3142(f)(2), and the statute sets forth a series of factors the court must consider in making its determination, including whether the offense involves a firearm. *Id.* § 3142(g).

## III. DETENTION HEARING

### A. Two Portraits of One Man

Mr. Carey, twenty-six years old, is a lifelong resident of the Brockton, Massachusetts area. There is distinct disagreement about Mr. Carey's character and whether he poses a threat to others. Two witnesses, Gabanax Picard, the Defendant's long-time friend, and Liseth Lopes, Defendant's fiancée, describe Mr. Carey as religious and non-violent. While acknowledging that Mr. Carey has had past run-ins with the law,

---

[1] Effective July 27, 2006, Congress amended 18 U.S.C. § 3142 to allow pretrial detention for offenses involving firearms and to require consideration of this offense as a factor in determining whether to grant pretrial detention. Adam Walsh Child Protection and Safety Act, Pub. L. No. 109-248, 120 Stat. 617, at § 216 (codified at 18 U.S.C. § 3142(f)(E), (g)) (effective July 27, 2006). This amendment statutorily resolves whether the Government may move for pretrial detention for an offense involving possession of a firearm. Previously, the statutory standard turned on whether a charge of illegal possession of a firearm was a crime of violence within the meaning of 18 U.S.C. § 3142(f)(1)(A), an issue on which courts were divided. *Compare United States v. Dillard*, 214 F.3d 88 (2d Cir. 2000); *United States v. Escobar Gonzalez*, No. 05-063, 2005 WL 459643 (D.P.R. Feb. 25, 2005); *United States v. Colon Osorio*, 188 F. Supp. 2d 153 (D.P.R. 2002); *with United States v. Singleton*, 182 F.3d 7 (D.C. Cir. 1999); *United States v. Say*, 233 F. Supp. 2d 221 (D. Mass. 2002); *United States v. Powell*, 813 F. Supp. 903 (D. Mass 1992).

and that he has made some bad choices, these witnesses say that Mr. Carey has straightened out his life. According to them, Mr. Carey is fully employed and the devoted father of a four-year-old daughter.

The Government's witnesses paint a very different portrait of Mr. Carey. Brent McSweyn, a special agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), testified that a cooperating witness identified Mr. Carey as a leader of the Gangster Disciples, a Massachusetts-based gang, which is involved in the Bangor-area drug trade, and has been involved in several local fights. The cooperating witness also says that one of Mr. Carey's alleged associates in the purported gun sale at issue in this case, James Damon, threatened to kill her if she went to the police. Amie Blanchette, a United States Probation Officer, testified that during interviews she conducted to prepare Mr. Carey's bail report she was informed by Eric Telford, a member of the Massachusetts State Police Gang Unit Office, that Mr. Carey is a member of the Gangster Disciples, that he has been involved in dealing crack cocaine, and that his place of employment is a front to launder drug money. Through Mr. McSweyn and Ms. Blanchette, the Government introduced evidence of Mr. Carey's criminal history, including a conviction for carrying a firearm without a license in 2005 and two prior drug convictions.

The Government also entered into evidence a thirty-minute surveillance videotape from the pawnbroker's shop in Bangor, where the gun transaction was attempted. The videotape shows three males, including a person identified as the Defendant, hovering over the glass counter, inspecting firearms, and ultimately selecting three pistols, while two disinterested females hung back at the rear of the customer area of the store. When

time came to make the purchase, one of the males (not the Defendant) fished out some additional cash and one of the females stepped forward, completed the paperwork, and attempted to purchase the pistols the males desired.[2]

The resolution of the motion for pretrial detention depended upon which of these inconsistent portraits of the Defendant the evidence established: a mild-mannered, hard-working family man or a violent, drug-dealing gang member.

### B.     The Statutory Criteria

To resolve the disagreement, this Court has applied the statutory criteria in 18 U.S.C. § 3142(g):

**(1)   The nature and circumstances of the offense, including whether the offense involved firearms - 18 U.S.C. § 3142(g)(1)**

The Indictment charges Mr. Carey with three firearms offenses. As directed by Congress, this is a factor against release. The circumstances of the offense are also troubling. Mr. Carey is alleged to have conspired in the illegal cash purchase in Bangor, Maine of three weapons: a Springfield Armory .45 caliber pistol, model XD45; an Israel Military Industries Desert Eagle, 9 mm caliber pistol; and a Glock .45 caliber pistol, model 21. There is no evidence that these weapons are suitable for hunting or target practice. In particular, Glocks are small, easily concealed, and serious. The type of firearms is a factor against release. In addition, Mr. Carey was convicted in Massachusetts for carrying a firearm without a license three years ago. This prior firearm offense is another factor against release.

**(2)   The weight of the evidence against the Defendant - 18 U.S.C. § 1342(g)(2)**

---

[2] At one point, the videotape shows the Defendant pulling cash out of his pocket, but it appears another male came up with the extra cash necessary to buy the three firearms, and the Defendant put the money back in his pocket.

4

The Government introduced a particularly compelling piece of evidence: a surveillance videotape obtained from Frati's Pawnshop, the business where the weapons at issue were purchased, recording the events of October 11, 2007. The roughly thirty-minute videotape shows three men and two women in a pawnshop, along with the proprietor of the shop. Although the videotape lacks audio, it is evident that the men, not the women, are interested in the pawnshop's inventory of firearms. One of the three men bears a striking resemblance to Mr. Carey, and at one point in the videotape, this individual handles a firearm.

Agent McSweyn testified that photographs from the videotape were sent to law enforcement officers in Massachusetts for identification. After identifying the individuals, the Massachusetts officers supplied license and booking photographs of the men on the videotape to the ATF. The ATF showed these pictures to the cooperating witness. The cooperating witness identified one of the three men in the photographs as the man she knew by the street name of "Miss" or "Chops." Agent McSweyn testified that Massachusetts law enforcement know the name "Chops" to be associated with Mr. Carey. The other two men were identified as Christopher Riley and James Damon. Both Mr. Riley and Mr. Damon have past criminal convictions.

The Government also introduced photographs of three firearms seized from the car of the cooperating witness on the evening of the transaction at the pawnshop as well as documents relating to Mr. Carey, including his NCIC III criminal history, his criminal history from the Commonwealths of Massachusetts and Virginia, court conviction records and police reports from the Commonwealth of Massachusetts, and a bail report.

The weight of evidence against the Defendant, particularly on the gun possession charge, is overwhelming.  The Government established that the Defendant has previously been convicted of a felony.  For practical purposes, the only other contested question is whether he actually possessed a firearm, and the videotape shows a person identified as the Defendant actually handling a pistol.  This possession, however brief, is sufficient to convict.  *See United States v. Teemer*, 394 F.3d 59, 63 (1st Cir. 2005) (stating that "the briefest moment of possession may be enough for a conviction"); *United States v. Holt*, 464 F.3d 101, 107 (1st Cir. 2006) (declining to require that the jury be instructed on an innocent possession defense).

The weight of evidence on the conspiracy to make false statements and aiding and abetting false statements charges is also substantial.  The videotape demonstrates that the three males are the people interested in the firearms and that the two females could not have been more disinterested.  After the males make their selections, the evidence is that the cost of the three pistols exceeded the amount that the confidential informant had been given before entering the pawnshop.  The Defendant then produces some additional money as does another male.  Money from the second male is apparently given to the female, who for the first time approaches the glass counter and begins to sign the ATF forms as the purported actual purchaser of the firearms.  The cumulative evidence against the Defendant on Counts One and Two is powerful.

The weight of the evidence against the Defendant is a factor strongly against his release.

**(3)   The history and characteristics of the Defendant - 18 U.S.C. § 3142(g)(3)(A)**

6

The statute directs the court to consider a number of factors relating to the Defendant's history and characteristics, ranging from his criminal record to his family ties. Mr. Carey's criminal history includes three convictions in Massachusetts: possession of a Class B drug with intent to distribute in 2000, possession of a Class B drug with intent to distribute in 2001, and carrying a firearm without a license in 2005. *Gov't* Ex. 3. This last conviction is particularly disturbing because it involved the type of conduct at issue in this matter, the unlawful possession of a firearm. Mr. Carey has also provided police a false name in the past. *Gov't* Ex. 4. During one incident, Mr. Carey was stopped by Virginia police driving ninety-six miles-per-hour in a fifty-five miles-per-hour zone. *Id*. Mr. Carey gave a false name and the other passengers claimed to not know Mr. Carey's identity. *Id*. Mr. Carey then swore under oath at his arraignment that he was another individual, only confessing his true identity later while in jail. *Id*. Mr. Carey's criminal history is another factor against release.

There are positive aspects to Mr. Carey's presentation. He has a devoted fiancée and a young child and he contributes financially to their well-being. He is a devoted member of the New Jerusalem Church of God. He is close to his mother. His long-time friend traveled the distance from Brockton, Massachusetts to Bangor, Maine to testify to Mr. Carey's good character. He is currently employed and is in the process of learning a new profession.

Mr. Carey's employment, however, became a source of controversy. Mr. Carey's witnesses described Quality Market in Brockton, Massachusetts, where he worked, as an unremarkable corner convenience store, similar to Seven-Eleven. On the other hand, Probation Officer Blanchette testified that on two occasions she called Quality Market to

confirm Mr. Carey's employment and on both occasions no one answered. To compile Mr. Carey's bail report, Ms. Blanchette testified that she spoke with Eric Telford of the Massachusetts State Police Gang Unit Office. Trooper Telford identified Quality Market as a front to launder money. Mr. Telford also told her that Thomas Harris, whom Mr. Carey identified as his employer at Quality Market, is a known leader of a drug ring.

If the only evidence had been the irreconcilably contrasting portraits of the Defendant posited by the prosecution and defense witnesses, the merits of the motion for detention would have been much closer. The videotape is the sockdolager. The videotape shows someone who looks like the Defendant, assisting in the purchase of three handguns in Bangor, Maine. The defense offered no explanation as to how to reconcile the family man in Brockton with the gun purchaser in Bangor. By contrast, the videotape is wholly consistent with the Government's portrait of Mr. Carey as a man with ties to illegal activity both in Maine and Massachusetts.

>  **(4)   Whether, at the time of the current offense or arrest, the Defendant was on probation, parole, or other release pending trial – 18 U.S.C. § 3142(g)(3)(B)**

One further statutory factor is whether the Defendant was on probation, parole, or other release pending trial when he was arrested on the pending federal charge. 18 U.S.C. § 3142(g)(3)(B). There is no evidence that this factor applies to Mr. Carey.

>  **(5)   The nature and seriousness of the danger to any person or the community – 18 U.S.C. § 3142(g)(4)**

Agent McSweyn testified that the cooperating witness, Ms. Wickett, was approached a few days after October 11, 2007 by Mr. Damon and Mr. Riley. Mr. Damon asked her if she had spoken to the police and she denied having done so. Mr. Damon told her that if he discovered that she did speak with police "he would kill her." The

Government asserted that until this hearing, Ms. Wickett's cooperation with police was unknown by Mr. Carey, Mr. Damon, or Mr. Riley.  Accordingly, the Government expressed concern that Ms. Wickett's safety would be in danger were the Court to release Mr. Carey.

The Court takes the threat to Ms. Wickett's well-being very seriously.  While Mr. Carey did not utter the alleged threat to kill Ms. Wickett, the evidence indicates Mr. Carey was associated with Mr. Damon and Mr. Riley.  Mr. Carey has a past firearm offense and has allegedly been involved in violent activity, including two fights.  The nature and seriousness of the danger to Ms. Wickett and the general community is a strong factor against release.

### C.    No Condition or Combination of Conditions

Mr. Carey represented that he would agree to any conditions as an alternative to incarceration, including electronic monitoring.  The Court recognizes that detention prevents him from being with his mother, his fiancée and his young daughter, positive influences in his life.  Further, incarceration adversely impacts both his financial well-being and that of his family by keeping him both from his work at Quality Market and pursuit of a position in the Painters' Union.  The Court is not, however, convinced that there are conditions available sufficient to reasonably assure the safety of other persons and the community.  In the end, the weight of the evidence against Mr. Carey at this time is simply too great to persuade the Court that any combination of conditions is adequate.

## IV.   CONCLUSION

The Court concludes that the Government has met its high burden in this case and has demonstrated by clear and convincing evidence that no condition or combination of

conditions will reasonably assure the safety of other persons and the community. The Defendant is ORDERED detained pending further order of this Court.

The Defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 19th day of September, 2008