UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-08-157-B-W-02 |
| | ) | |
| LEVAR CAREY | ) | |

**ORDER ON MOTION TO DISMISS
THE SUPERSEDING INDICTMENT**

In his motion to dismiss, Levar Carey claims that the Superseding Indictment improperly gilds the original Indictment. The Court denies the motion.

**I.     BACKGROUND**

On August 13, 2008 a federal grand jury indicted Christopher Riley, Levar Carey, and James Damon for various firearms-related offenses. Mr. Carey was indicted for one count of conspiring to make false statements in acquisition of firearms (Count One), one count of aiding and abetting the making of a false statement in acquisition of firearms (Count Two), and one count of possession of a firearm by a felon (Count Four). *Indictment* (Docket # 3) (*Indict.*). On the same date, an arrest warrant issued. *Warrant of Arrest* (Docket # 11). Following his arrest, Mr. Carey was assigned counsel, and he made his initial appearance on September 4, 2008 and was ordered temporarily detained. *CJA 20 as to Levar Carey* (Docket # 20); *Minute Entry* (Docket # 27); *Order of Temporary Detention Pending Hearing Pursuant to Bail Reform Act* (Docket # 29). After a detention hearing on September 11, 2008, the Court ordered Mr. Carey detained on September 19, 2008. *Minute Entry* (Docket # 34); *Detention Order* (Docket # 40).

On September 17, 2008, Mr. Carey and his codefendants were placed on the trial list for November 2008. *Nov. Trial List* (Docket # 37). On October 21, 2008, Mr. Riley moved to continue the trial. *Speedy Trial Order* (Docket # 58). The Court granted the motion, and the trial of all three defendants was put on the December 2008 trial list. *Id.*; *Dec. Trial List* (Docket # 57). In late November 2008, Mr. Carey's first counsel withdrew, and Leonard Sharon began Mr. Carey's representation. *Entry of Appearance* (Docket # 70); *Mot. to Withdraw* (Docket # 72); *Order* (Docket # 73). On November 21, 2008, Mr. Carey moved to continue, the motion was granted, and Mr. Carey's trial was placed on the January 2009 trial list. *Def. Levar Carey's Mot. to Continue* (Docket # 69); *Order* (Docket # 74); *Jan. Trial List* (Docket # 76); *Speedy Trial Order* (Docket # 78). On December 8, 2008, Mr. Carey again moved to continue, the motion was again granted, and the trial was placed on the February 2009 trial list. *Def. Levar Carey's Mot. to Continue* (Docket # 84); *Order* (Docket # 85); *Feb. Trial List* (Docket # 92); *Speedy Trial Order* (Docket # 88). On January 12, 2009, Mr. Carey again moved to continue, the motion was granted, and the trial was placed on the March 2009 trial list. *Def. Levar Carey's Mot. to Continue* (Docket # 93); *Order* (Docket # 95); *Mar. Trial List* (Docket # 97); *Speedy Trial Order* (Docket # 96). On February 6, 2009, the trial was moved up to the last week in February. *Am. Trial List* (Docket # 109).

On February 11, 2009, roughly six months after indictment, and about two weeks prior to trial, a grand jury issued a Superseding Indictment. *First Superseding Indictment* (Docket # 111) (*Superseding Indict.*). The Superseding Indictment differed from the Indictment in the following respects: (1) it removed James Damon from the list of

defendants[1]; (2) it added a reference to the race of one participant in the alleged conspiracy to make false statements, *id.* at 2; and, (3) it added two firearms to Count Four, which charged Mr. Carey with unlawful possession of a firearm by a felon. *Id.* at 6-7. Count Four in the original Indictment alleged that Mr. Carey unlawfully possessed a Springfield Armory, .45 caliber pistol, and an Israel Military Ind., Desert Eagle, 9 mm caliber pistol; Count Four of the Superseding Indictment added a Glock, .45 caliber pistol, and a Ruger, 9 mm caliber pistol. *Indict.* at 6; *Superseding Indict.* at 6-7.[2]

On February 17, 2009, Mr. Carey moved to dismiss the Superseding Indictment. *Mot. to Dismiss the Superseding Indictment* (Docket # 123) (*Def.'s Mot.*). On the same day, the Government responded. *Gov't's Resp. to Def.'s Mot. to Dismiss First Superseding Indictment for Violation of Speedy Trial Act* (Docket # 133) (*Gov't's Resp.*).

## II.   THE PARTIES' POSITIONS

### A.   Mr. Carey's Complaint: A Gilded Charge

Mr. Carey contends that the Superseding Indictment violates a provision of the Speedy Trial Act (STA), which requires that "[a]ny . . . indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested . . . ." 18 U.S.C. § 3161(b). Mr. Carey points out that he had been in custody for much longer than thirty days prior to February 11, 2009 and, therefore, the question becomes "whether § 3161(b) of the STA applies to superseding indictments." *Def.'s Mot.* at 1. Mr. Carey agrees that § 3161(b) does not apply to all superseding indictments. He concedes that if the superseding indictment contains charges identical to the original indictment or different charges, § 3161(b) would not

---

[1] Mr. Damon had pleaded guilty.
[2] Although not originally included in Count Four, the Glock was referenced in Counts One and Two of the Indictment. *Indict.* at 3-4. The initial Indictment did not refer to the Ruger.

3

apply. However, Mr. Carey says that if the superseding indictment merely "gilds the charges set forth in the original Indictment," it is subject to § 3161(b) and must be dismissed. *Def.'s Mot.* at 7.

In support, Mr. Carey relies on two Fifth Circuit cases: *United States v. Giwa*, 831 F.2d 538 (5th Cir. 1987), and *United States v. Bailey*, 111 F.3d 1229 (5th Cir. 1997). In *Giwa*, which Mr. Carey says gave birth to the notion of a gilded charge, the Fifth Circuit referenced gilding only in passing. After stating the general rule that an arrest on one charge does not trigger the right to a speedy trial on another filed after the arrest, the *Giwa* Court observed there is a "notable exception"—if the "subsequent charge merely 'gilds' the initial charge filed against an individual and the different accusatorial dates between the two charges are not reasonably explicable, the date of the initial arrest may trigger the applicable time periods of the Act as to prosecution for both offenses." *Giwa*, 831 F.2d at 542.

The Fifth Circuit addressed the issue at greater length in *Bailey*. Quoting the dictionary definition of "gilding," the *Bailey* Court referred to gilding an indictment as "embellishing" or adding "unnecessary ornamentation". *Bailey*, 111 F.3d at 1236. A gilded charge, the Circuit explained, is "one that merely annotates in more detail the same charge alleged in the initial accusatory instrument." *Id.* Pointing out that the Superseding Indictment in this case is for the same charge as the original Indictment with precisely the same elements and that the Superseding Indictment only adds facts, Mr. Carey argues that the superseding indictment here gilds the original Indictment and must be dismissed. *Def.'s Mot.* at 6. Specifically, he protests the addition of two guns to Count Four of the Superseding Indictment, claiming that the Government is seeking to

4

gain an advantage, because possession of three or more firearms results in a sentencing enhancement under U.S.S.G. § 2K2.1(b)(1).  *Id.* at 7.

### B. The Government's Multi-Layered Response

The Government's first position is that § 3161(b) does not apply.  *Gov't's Resp.* at 1-2.  The Government starts with the STA provision that addresses sanctions:

> If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) . . ., such charge against that individual contained in such complaint shall be dismissed or otherwise dropped.

18 U.S.C. § 3162(a)(1).  The Government argues that this sanction clarifies that § 3161(b) applies only when the criminal prosecution is initiated by a complaint, and since this prosecution began with an indictment, § 3161(b) does not apply.  *Gov't's Resp.* at 2-3.

The Government next argues that the Superseding Indictment in this case does not defeat the purpose underlying the thirty-day rule.  *Id.* at 3-4.  It contends that the purpose of the rule is to ensure that the defendant is not held under an arrest warrant for an excessive period without receiving formal notice of the charge that will ultimately be levied against him.  *Id.*  Here, the Government notes that Mr. Carey was indicted before he was arrested, so the policy implications of the statute have not been violated.

Third, the Government contends that the "gilded charge" concept is at the same time older and vaguer than the Defendant proposes, and that the concept does not fit squarely into the facts in this case.  It also says that the First Circuit has "done little" with the concept.  *Id.* at 4-7.

Fourth, the Government observes that even those courts that have adopted the "gilded charge" concept have allowed superseding indictments to make minor factual changes without running afoul of the STA. *Id.* at 7-9.

Finally, the Government urges the Court to reject the "gilded charge" concept and to return to the view that a superseding indictment assists the defendant by avoiding initial unwarranted overcharging and at the same time allowing the Government to clarify facts underlying the charge, thus performing the dual function of informing the defendant and preventing later re-indictment on the same charge. *Id.* at 9-10.

## III.  DISCUSSION

In the context of this case, it is difficult to square the underlying purpose of the STA with the gilded charge concept. The First Circuit has observed that the STA, as amended, creates two distinct periods of time to be counted: first, the STA "imposes a thirty-day limit on the time between arrest and the filing of an indictment or information" and second, the STA provides for "a seventy-day limit on the time between the date that the indictment or information is made public, or the date of first appearance (whichever is later), and the date of trial." *United States v. Spagnuolo*, 469 F.3d 39, 42-43 (1st Cir. 2006).

Here, it is the first period—the thirty-day interval between arrest and formal charge—that is at issue. Noting that § 3161(b) requires the Government to file an indictment against a defendant "within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges," the First Circuit has explained that a "main aim of the timely indictment requirement is to ensure that the defendant is not held under an arrest warrant for an excessive period without

receiving formal notice of the charge against which he must prepare to defend himself." *United States v. Grullon*, 545 F.3d 93, 96-7 (1st Cir. 2008) (citations and internal punctuation omitted). A second purpose is to "reduc[e] defendants' opportunity to commit crimes while on pretrial release and preventing extended pretrial delay from impairing the deterrent effect of punishment." *Id.* (citations and internal punctuation omitted).

Neither purpose is relevant here. Here, Mr. Carey was first indicted, then arrested. He was in no danger of being held for any period without receiving formal notice of the charge nor was he in any danger of committing further crimes since he was incarcerated pending trial. Finally, any delay in bringing the case to trial was occasioned by the Defendant's own multiple motions to continue and had nothing to do with the Superseding Indictment.

In view of the purposes of the STA, it is not surprising that the language of the law fits awkwardly with Mr. Carey's contentions. In relevant part, the STA provides:

> Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.

18 U.S.C. 3161(b). The statutory language confirms that a primary intent of the STA was "to ensure that accused individuals do not suffer for more than thirty days without being formally charged." *United States v. Hajduk*, 370 F. Supp. 2d 1103, 1108 (D. Co. 2005). Because Mr. Carey was formally charged prior to his arrest, § 3161(b) has "no application." *Id.*

This conclusion is borne out by the language in § 3162, which establishes the sanction for violation of § 3161(b):

> If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) . . ., such charge against that individual contained in such complaint shall be dismissed or otherwise dropped.

18 U.S.C. § 3162(a)(1). This language reinforces the view that § 3161(b) was never intended to apply to superseding indictments in situations of this sort, since the sanction is triggered only when a person has been charged by complaint, not when a person has been previously indicted.

Mr. Carey's motion is saturated with pejoratives about a gilded indictment. *Def.'s Mot.* at 4-5 (denominating a gilded indictment as "a form of puffery in pleading" and "an end-around"). While well written, the metaphorical advocacy lacks substance. It remains difficult to understand what prejudice Mr. Carey is claiming flows from the Superseding Indictment. The trial of his case will not be delayed because of the Superseding Indictment; he has not moved for a continuance and the jury is scheduled to be impaneled on February 23, 2009. In this most basic sense, the STA is not in play. He has not claimed that the Superseding Indictment has presented any unheralded discovery, witness, or legal issues. If Mr. Carey made those claims, the Court would have to determine whether his case should be continued due to the last minute nature of the Superseding Indictment, but the ruling would not be based on STA issues.

Mr. Carey has made a single claim of prejudice. He says that the Superseding Indictment may affect his sentence, since it adds two guns to the charge and may tip him into an enhancement under U.S.S.G. § 2K2.1(b)(1). This does not necessarily follow. To convict Mr. Carey of unlawful possession, the jury must find beyond a reasonable doubt that he possessed "any firearm" on October 11, 2007. 18 U.S.C. § 922(g). Jury

unanimity on the specific firearm is not required. *United States v. Verrechia*, 196 F.3d 294, 301 (1st Cir. 1999) (noting that "Congress did not intend the possession of a particular firearm to be an element of a § 922(g)(1) violation"); *United States v. Leahy*, 473 F.3d 401, 409-10 (1st Cir. 2007) (stating that "there is no need for unanimity within the relevant unit of prosecution, that is, with respect to weapons possessed 'in one place at one time'" (quoting *Verrechia*, 196 F.3d at 298)). Accordingly, if convicted of unlawful possession, the exact number of firearms possessed will remain a question for determination at sentencing. Therefore, just as omission of the two firearms from the Indictment would not have precluded the Government from proving at sentencing that the enhancement applied, inclusion of the two firearms in the Superseding Indictment will not, as Mr. Carey asserts, "gain the sentencing enhancement." *Def.'s Mot.* at 7.[3]

Further, the Superseding Indictment protects Mr. Carey. If the Government had not superseded, had gone to trial on the two originally indicted firearms, and lost, it would at least be theoretically possible it would initiate a second charge against him based on the two uncharged firearms. The Superseding Indictment thus fulfills its purpose of not only enlightening the defendant as to the nature of the charge against which he must defend, but also enabling him "to plead double jeopardy in bar of future prosecutions for the same offense." *United States v. Sepulveda*, 15 F.3d 1161, 1192 (1st Cir. 1993).

---

[3] Count Four of both the Indictment and the Superseding Indictment allege the possession of firearms by Mr. Carey on October 11, 2007. In his motion, Mr. Carey makes no argument that the alleged possession of the two additional firearms listed for the first time in the Superseding Indictment took place at another time or place than those in the original Indictment. Accordingly, it does not appear that the additional firearms constitute a distinct "unit of prosecution" requiring separate proof of possession. *See Leahy*, 473 F.3d at 410.

Despite skepticism about the concept of a gilded charge and its application to the STA, at least in the context of this case, the Court will in excess of caution address whether the Superseding Indictment can fairly be characterized as a gilded charge. *Hajduk*, 370 F. Supp. 2d at 1109. A superseding indictment is "saved" if it comes within one of the exceptions to the STA, described by Judge Hornby of this District:

> [T]he First Circuit has held that a superseding indictment containing charges identical to those in the original indictment and based on identical facts is not subject to the thirty-day limit. *United States v. Mitchell*, 723 F.2d 1040, 1044-45 (1st Cir. 1983). Other circuits have permitted a superseding indictment after the thirty-day limit if the superseding indictment contains different charges than the original indictment. *United States v. Orbino*, 981 F.2d 1035, 1037 (9th Cir. 1992); *United States v. Castellano*, 848 F.2d 63, 65 (5th Cir. 1988). The defendant argues that this Superseding Indictment fits neither of those two categories. Instead, he contends, it is what the Fifth Circuit terms a 'gilded charge' that is subject to the original thirty-day time limit.
> A gilded charge exists 'where a subsequent charge merely gilds the initial charge filed against an individual and the different accusatorial dates between the two charges are not reasonably explicable.' *United States v. Bailey*, 111 F.3d 1229, 1236 (5th Cir. 1997) (citation omitted).

*United States v. Brown*, 335 F. Supp. 2d 146, 148 (D. Me. 2004); *see also United States v. Davis*, 2005 U.S. Dist. LEXIS 153, at *4-6 (D. Me. Jan. 6, 2005).

Here, the original Indictment and the Superseding Indictment allege the same offense, but the Superseding Indictment alleges new facts, so it does not fit cleanly within either the "same charge—same facts" exception nor the "different charge" exception. Count Four of both the Indictment and the Superseding Indictment allege that Mr. Carey illegally possessed firearms on October 11, 2007; the only difference is the additional two firearms.

This case is not unlike *United States v. Carrasco*, 257 F.3d 1045 (9th Cir. 2001), where the Ninth Circuit concluded that the addition of ammunition to a felon in

possession charge did not gild the original charge. The *Carrasco* Court discussed *United States v. Perez*, 217 F.3d 323 (5th Cir. 2000), where the Fifth Circuit concluded that adding the names of additional smuggled aliens to an indictment did not constitute a gilded charge. *Carrasco*, 257 F.3d at 1052-53. If adding the names of smuggled aliens did not gild the charge, then *Carrasco* reasoned that adding ammunition to a firearms possession charge would not do so either. *Id.* The same logic applies to adding firearms to a felon in possession charge.

>Significantly, in *Perez*, the Fifth Circuit observed that
>
>>even an indictment that is timely returned but later is found to be legally deficient has been held to satisfy the 'any information or indictment' language of § 3161(b) if the subsequent indictment is materially identical to the first indictment, the government does not act in bad faith, and there is no prejudice to the defendant.

*Perez*, 217 F.3d at 328. To the extent the gilded charge concept retains saliency, it would certainly be where the government acted in bad faith and the defendant was prejudiced. Neither has been claimed here.

## IV.   CONCLUSION

The Court DENIES the Defendant's Motion to Dismiss the Superseding Indictment (Docket # 123).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 19th day of February, 2009