UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-08-157-B-W-02 |
| | ) | |
| LEVAR CAREY | ) | |

**ORDER ADDRESSING DEFENDANT'S SENTENCING MEMORANDUM**

Levar Carey contends that guilty-filed dispositions in Massachusetts state court do not count as convictions for purposes of the Armed Career Criminal Act (ACCA). Based on the Massachusetts Supreme Judicial Court's comment in *Commonwealth v. Simmons*[1] that "[i]t is well established that a judgment of conviction does not enter unless sentence is imposed," the Court agrees.

## I.    STATEMENT OF FACTS

On May 6, 2009, after a two-day jury trial, Levar Carey was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). *Jury Verdict* (Docket # 200). On September 9, 2009, the Probation Office (PO) completed the Presentence Investigation Report (PSR). The PSR listed three Massachusetts state drug offenses in Mr. Carey's Criminal History and concluded that Mr. Carey was subject to the fifteen-year mandatory minimum term of imprisonment pursuant to the ACCA, 18 U.S.C. § 924(e). *PSR* ¶ 37.[2] The second drug offense

---

[1] 863 N.E.2d 549, 551 n.2 (Mass. 2007).

[2] The first drug offense involved charges of possession to distribute Class B drugs and possession of a Class D controlled substance based on events occurring on November 19, 1999. *Gov't's Ex.* 3B, State Docket No. 9932CR7126; *PSR* ¶ 25. On March 18, 2000, Mr. Carey was sentenced to two-years split sentence, 59 days incarceration and the rest on probation on Count One and two-years probation on Count Two; Mr. Carey's probation was revoked on February 15, 2001 and he was sentenced to 22 months in custody on both Counts to be served concurrently. *Gov't's Ex.* 3C; *PSR* ¶ 25. The third drug offense involved charges of distribution of Class B drugs, possession to distribute Class B drugs, possession of Class D controlled substances, and two charges of conspiracy to violate the Controlled Substance Act based on events that occurred on January 12, 2001. *Gov't's Ex.* 5A, State Docket No. 0132CR000410; *PSR* ¶ 27. On February 15, 2001, Mr. Carey pleaded guilty to all five charges and was

involved charges of possession with intent to distribute cocaine and conspiracy to commit a drug offense based on events occurring on November 20, 2000. *Gov't's Ex.* 4A, State Docket No. 0032CR007410; *PSR* ¶ 26. On February 15, 2001, Mr. Carey pleaded guilty to both crimes, and his pleas were "filed with defendant's consent." *Gov't's Ex.* 4C; *PSR* ¶ 26. Mr. Carey was never sentenced on either charge. *Id.*

The resolution of this issue is potentially significant for Mr. Carey. If the second charge is a conviction, Mr. Carey faces the ACCA's fifteen year mandatory minimum term of incarceration, and his guideline sentence range jumps to 235 to 293 months. But if the second charge is not a conviction, his total offense level would be 28, and his guideline range would fall to 140 to 175 months.[3]

On October 28, 2009, Mr. Carey filed a sentencing memorandum, arguing that because guilty-filings are not convictions under Massachusetts law, Mr. Carey's second drug offense does not count as a conviction for purposes of the ACCA. *Def.'s Sentencing Mem.* (Docket #

---

sentenced to 27 months incarceration on count one and the remaining charges were filed. *Gov't's Ex.* 5C; *PSR* ¶ 27. Mr. Carey acknowledges that the first and third offenses are predicate convictions for the ACCA.

[3] The PO calculated Mr. Carey's guideline range by starting with a base offense level of 24 under U.S.S.G. § 2K2.1(a)(2), adding a two-level specific offense characteristics under U.S.S.G. § 2K2.1(b)(1)(A) because three firearms were involved, applying an enhancement for obstruction of justice under U.S.S.G. § 3C1.1, and arriving at an adjusted offense level of 28. *PSR* ¶¶ 12-20. Under U.S.S.G. § 4B1.1(b)(3)(B), Mr. Carey's status as an armed career criminal increases the total offense level to 33. *Id.* ¶ 21. The PO calculated Mr. Carey's criminal history category as VI, based on thirteen criminal history points. *Id.* ¶¶ 25-40. With a criminal history of VI and a total offense level of 33, the guideline range for imprisonment is 235 to 293 months. *Id.* ¶ 63.

If the second drug offense plea on February 15, 2001 does not count as a conviction, Mr. Carey is not subject to the increase in the adjusted offense level from 28 because he would no longer be subject to the ACCA enhancement under U.S.S.G. § 4B1.1(b)(3). A criminal history of VI and a total offense level of 28 results in a guideline range of imprisonment of 140 to 175 months.

Mr. Carey's guilty-filed dispositions still count towards criminal history points. The Sentencing Commission specifically states that such dispositions are counted: "A diversionary disposition resulting from a finding or admission of guilt, or a plea of <u>nolo contendere</u>, in a judicial proceeding is counted as a sentence under § 4A1.1(c) even if a conviction is not formally entered." U.S.S.G. § 4A1.2(f); *see also* U.S.S.G. § 4A1.2(a)(4) (stating that "'convicted of an offense,' for purposes of this provision, means that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of <u>nolo contendere</u>"). Unlike the ACCA that defines "conviction" in relation to state law, the Sentencing Commission defines what dispositions count towards criminal history points without regard to state treatment.

231) (*Def.'s Mem*).  The Government responded on November 12, 2009.  *Gov't's Sentencing*
*Mem.* (Docket # 235) (*Gov't's Mem*).

On December 31, 2009, Mr. Carey filed motions in Massachusetts state court for new
trials on all three state drug offenses based on claims of ineffective assistance of counsel.  The
commonwealth courts denied two motions on February 1, 2010 and the final on March 11, 2010.
On April 15, 2010, this Court scheduled sentencing for June 21, 2010.  *Notice of Hearing*
(Docket # 260).  On May 27, 2010, Mr. Carey filed a brief memorandum with the Court
enclosing the First Circuit opinion in *Griffiths v. Immigration and Naturalization Service*, 243
F.3d 45 (1st Cir. 2001).  On June 4, 2010, the Government filed a supplemental sentencing
memorandum.  *Gov't's Supp. Sentencing Mem.* (Docket # 261).

## A. The ACCA

The ACCA provides that "a person who violates section 922(g) of this title and has three
previous convictions by any court . . . for a violent felony or a serious drug offense, or both . . .
shall be fined under this title and imprisoned not less than fifteen years."  18 U.S.C. § 924(e)(1).
The ACCA defines a serious drug offense as "an offense under State law, involving
manufacturing, distributing, or possession with intent to manufacture or distribute, a controlled
substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by
law."  18 U.S.C. § 924(e)(2)(A)(ii).[4]  "What constitutes a conviction [under the ACCA] shall be
determined in accordance with the law of the jurisdiction in which the proceedings were held."
18 U.S.C. § 921(a)(20).  Massachusetts law determines whether a "guilty-filed" plea constitutes
a conviction for purposes of the ACCA.  *United States v. Sousa*, 468 F.3d 42, 45 (1st Cir. 2006)
(looking to Massachusetts law to determine whether a conviction is a felony for purposes of the
ACCA).

---

[4] Mr. Carey admits that the three drug offenses, if convictions, qualify as serious drug offenses.

## B.     Massachusetts Guilty-Filings

The current Massachusetts practice of accepting guilty-filed dispositions continues a long-standing common law practice.   In *Simmons*, the Massachusetts Supreme Judicial Court (SJC) observed that the earliest judicial reference to the practice dates back to 1831. 863 N.E.2d at 554-55 (Mass. 2007) (citing *Commonwealth v. Chase*, Thacher's Crim. Cas. 267, 268 (Boston Mun. Ct. 1831)).   In 1874, the SJC described the practice:

> It has long been a common practice in this Commonwealth, after verdict of guilty in a criminal case, when the court is satisfied that, by reason of extenuating circumstances, or of the pendency of a question of law in a like case before a higher court, or other sufficient cause, public justice does not require an immediate sentence, to order, with the consent of the defendant and of the attorney for the Commonwealth, and upon such terms as the court in its discretion may impose, that the indictment be laid on file; and this practice has been recognized by statute. Such an order is not equivalent to a final judgment, or to a *nolle prosequi* or discontinuance, by which the case is put out of court; but is a mere suspending of active proceedings in the case, which dispenses with the necessity of entering formal continuances upon the dockets, and leaves it within the power of the court at any time, upon the motion of either party, to bring the case forward and pass any lawful order of judgment therein.

*Commonwealth v. John Dowdican's Bail*, 115 Mass. 133, 136 (Mass. 1874) (citations omitted). A "guilty-filed" plea "completely suspends the adjudicative process, including the defendant's right to appeal, until such time as the court reactivates or makes some further disposition of the case." *White v. Immigration and Naturalization Serv.*, 17 F.3d 475, 479 (1st Cir. 1994).   A guilty-filed disposition involves "an admission of sufficient facts for a possible finding of guilt, but not an explicit admission of guilt." *Griffiths*, 243 F.3d at 52 (quoting *United States v. Tavares*, 93 F.3d 10, 13 n.3 (1st Cir. 1996)).   The filing of a charge "is not a final judgment." *Griffiths*, 243 F.3d at 52 (quoting *Commonwealth v. Bianco*, 390 Mass. 254, 257, 454 N.E.2d 901, 903 (1983)). The procedure "suspend[s], for as long as the case remains on file, the defendant's right to appeal alleged error in the proceeding." *Griffiths*, 243 F.3d at 52 (quoting

*Commonwealth v. Delgado*, 367 Mass. 432, 438, 326 N.E.2d 716, 719 (1975)). "It is for this reason that a defendant must consent to filing." *Griffiths*, 243 F.3d at 52. Massachusetts recently enacted a rule governing the filing procedure. Mass. R. Crim. P. 28(e) (2009).[5] Although other states have authorized the filing of criminal actions, *see State v. Russo*, 2008 ME 31, ¶ 11, 942 A.2d 694, 697, the commonwealth of Massachusetts appears to "stand[] alone" in allowing "guilty-filed" dispositions. *Simmons*, 863 N.E.2d at 559.

## II. DISCUSSION

### A. The Parties' Positions

#### 1. Mr. Carey

Mr. Carey argues that guilty-filed dispositions "cannot be considered a predicate conviction for purposes of the ACCA." *Def.'s Mem.* at 2. He asserts that "in Massachusetts '[i]t is well established that a judgment of conviction does not enter unless sentence is imposed.'" *Def.'s Mem.* at 3 (quoting *Simmons*, 863 N.E. 2d at 551 n.2). Mr. Carey concludes that because

---

[5] Mass. R. Crim. P 28(e) states in pertinent part:

**(e) Filing.** The court may file a case after a guilty verdict or finding without imposing a sentence if the defendant and the Commonwealth both consent. With the consent of both parties, the judge may specify a time limit beyond which the case may not be removed from the file, and may specify any events that may cause the case to be removed from the file. The defendant shall file a written consent with the court as to both the filing of the case and any time limit or events regarding removal from the file. Prior to accepting the defendant's consent, the court shall inform the defendant on the record in open court:

(i) that the defendant has a right to request sentencing on any or all filed case(s) at any time;

(ii) that subject to any time limit imposed by the court, the prosecutor may request that the case be removed from the file and sentence imposed if a related conviction or sentence is reversed or vacated or upon the prosecutor's establishing by a preponderance of the evidence either that the defendant committed a new criminal offense or that an event occurred on which the continued filing of the case was expressly made contingent by the court; and

(iii) that if the case is removed from the file the defendant may be sentenced on the case.

In sentencing the defendant after the removal of a case from the file, the court shall consider the over-all scheme of punishment employed by the original sentencing judge.

"a guilty-filed disposition is not a final judgment or 'equivalent to sentencing,'" it is thus not a conviction. *Id.* at 3 (quoting *Griffiths*, 243 F.3d at 51-52). Observing that the "February 15, 2001 guilty plea resulted in a guilty-filed disposition" and no "sentence was imposed," Mr. Carey argues that "Massachusetts law establishes that the proceeding did not result in conviction." *Id.* at 4. Mr. Carey finds further proof for this conclusion in the fact that the First Circuit "noted without disapproval the decision of a federal District Court *not* to count Massachusetts guilty-filed dispositions as convictions." *Id.* (citing *Tavares*, 93 F.3d at 13 n.3).

## 2. The Government

The Government gives two reasons for why the Court should not follow footnote two in *Simmons*. First, the Government argues that the *Simmons* footnote represents a drastic departure from SJC precedent. *Gov't's Mem.* at 8 (citing *Commonwealth v. Lockwood*, 109 Mass. 323 (1872)). The Government describes how the SJC in *Lockwood* distinguished between a finding of guilty—the conviction—and a sentence—the judgment. *Id.* at 8-9 (citing *Lockwood*, 109 Mass. at 325).[6] Arguing that the phrase "judgment of conviction" refers to a finding of guilty plus a sentence—the distinction highlighted in *Lockwood*—the Government concludes that the *Simmons* footnote is "an accurate statement to the extent that it states that a 'judgment of conviction' is not entered until sentence is imposed." *Id.* at 9-11. Acknowledging that the *Simmons* footnote might go further when it states "'to place a conviction on file' is internally

---

[6] *Lockwood* states:

> The ordinary legal meaning of "conviction," when used to designate a particular stage of a criminal prosecution triable by a jury, is the confession of the accused in open court, or the verdict returned against him by the jury, which ascertains and publishes the fact of his guilt; while "judgment" or "sentence" is the appropriate word to denote the action of the court before which the trial is had, declaring the consequences to the convict of the fact thus ascertained. The authorities upon this point are so numerous that is will be sufficient to cite a few of those which show that such was the legal understanding and use of these words at the time of the adoption of our Constitution.

*Lockwood*, 109 Mass. at 325.

contradictory," the Government argues that this portion of the footnote is dictum and "should not control the case." *Id*. at 11.

Second, the Government argues that the Massachusetts Legislature "has clearly expressed a contrary intent" to *Simmons*. *Id*. at 12. The Government describes how guilty-filings qualify as convictions for purposes of the Massachusetts state sentencing enhancement statute: Mass. Gen. L. ch. 269, § 10G(a) enhances sentences for defendants who have previously been convicted of a serious drug offense and Mass. Gen. L. ch. 140, § 121 defines "conviction" for purposes of § 10G as "a finding or verdict of guilt or a plea of guilty, <u>whether or not a final sentence is imposed.</u>" *Gov't's Mem*. at 12.

More generally, the Government argues that the Legislature has consistently distinguished between a conviction and a sentence. *Id*. at 9 (describing how Mass. Gen. L. ch. 279, § 4 states that "[s]entence shall be imposed upon conviction of a crime"). The Government emphasizes that the only circuit to address the issue in depth, the Third Circuit, held that a state sentencing enhancement that counted guilty-filings as convictions indicated specific legislative intent and trumped the state common law definition of conviction as verdict plus sentence. *Id*. at 13 (citing *United States v. Jefferson*, 88 F.3d 240, 243 (3d Cir. 1996)). As in *Jefferson*, the Government concludes that "[w]here, as here, there is a Massachusetts statute which expressly allows the use of a guilty finding regardless of whether final sentence is imposed," the Court should disregard the common law definition if contrary. *Id*. at 14.

### B.    Legal Standard

When construing state common law, federal courts "are bound by the teachings of the state's highest court." *N. Amer. Specialty Ins. Co. v. Lapalme*, 258 F.3d 35, 38 (1st Cir. 2001). "In the absence of a definitive ruling by the highest state court, a federal court may consider

analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Carreiro v. Rhodes Gill and Co., Ltd*, 68 F.3d 1443, 1447 (1st Cir. 1995) (quoting *Michelin Tires (Canada), Ltd. v. First Nat'l Bank*, 666 F.2d 673, 682 (1st Cir. 1981)). The Court is expected to make an informed prophecy to "discern the rule the state's highest court would be most likely to follow under these circumstances, even if our independent judgment might differ." *Ambrose v. New Engl. Ass'n of Schs. & Colls., Inc.*, 252 F.3d 488, 497-98 (1st Cir. 2001).

In Massachusetts, courts are instructed to not interpret a statute "as effecting a material change in or a repeal of the common law unless the intent to do so is clearly expressed." *Commonwealth v. Cabral*, 819 N.E.2d 951, 957 (Mass. 2005); *Commercial Wharf E. Condominium Ass'n v. Waterfront Parking Corp.*, 552 N.E.2d 66, 71 (Mass. 1990) (stating that courts should not presume that the Legislature intended "a radical change in the common law without a clear expression of such intent").

### C. The First Circuit and "Guilty-Filed" Dispositions

The First Circuit has not directly ruled on whether a "guilty-filed" charge under Massachusetts state law is a conviction under the ACCA. But it has addressed "guilty-filed" charges in other contexts and close scrutiny of those opinions is illuminating, though not definitive. The First Circuit has considered whether a "guilty-filed" charge is a conviction for immigration purposes. *Griffiths*, 243 F.3d at 55; *White*, 17 F.3d at 479. The Supreme Court summarily addressed the issue in *Pino v. Landon* and concluded that the Court was "unable to say that the conviction has attained such finality as to support an order of deportation within the contemplation of § 241 of the Immigration and Nationality Act." 349 U.S. 901 (1955) (per curiam). Those cases have required the First Circuit to measure the Massachusetts guilty-filed

procedure against the federal immigration statute, which contains a specific definition of "conviction." By 2001, when the First Circuit decided *Griffiths*, the term "conviction" was statutorily defined:

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court, or, if adjudication of guilt has been withheld, where--
>
> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
>
> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

8 U.S.C. § 1101(a)(48)(A). Turning to the first definition, the *Griffiths* Court divided the language of § 1101(a)(48) into two prongs: the first "involves cases where there has been a 'formal judgment of guilt.' The second prong applies to deferred adjudications, and requires the presence of additional elements." *Griffiths*, 243 F.3d at 52. The *Griffiths* Court concluded that the "guilty-filed" plea did not meet the first requirement:

> The BIA's reliance on the second prong of the definition in this case is appropriate. While the immigration judge analyzed the case under the first prong, the record does not support finding a formal judgment of guilt. The structure of the statutory definition in § 101(a)(48)(A) requires that finding a formal judgment of guilt under the first prong of the definition entails a showing of something beyond a simple finding of guilt such as in the case-filed situation. Otherwise the reference in the second prong of the statute to deferred adjudications where either a judge or a jury has "found the alien guilty" would be rendered superfluous. The simple notation of "guilty-filed" on the docket sheet does not support the conclusion that Griffiths has been "convicted" within the meaning of the statute because there has been a "formal judgment of guilt."

*Id.* at 53 (internal citations omitted).

For purposes of this case, *Griffiths* is significant because it establishes that under First Circuit law, a "guilty-filed" disposition is not a "formal judgment of guilt." To the extent the

ACCA requires a "formal judgment of guilt" before a criminal disposition may be considered a conviction, *Griffiths* strongly suggests that a "guilty-filed" disposition would not qualify.[7]

### D.    *Hines* and *Tavares*

For purposes of determining whether a "guilty-filed" disposition constitutes a conviction, the federal prosecution of Daniel Tavares presents a mixed message.  In 1992, Judge Fuste sentenced Mr. Tavares in the United States District Court for the District of Massachusetts after he was convicted of being a felon in possession of a firearm.  *United States v. Hines*, 802 F. Supp. 559, 561 (D. Mass. 1992).

At sentencing, Judge Fuste addressed Mr. Tavares' "guilty-filed" dispositions and concluded that they constituted predicate convictions under the ACCA.  *Id.* at 573.  Judge Fuste concluded that "a conviction by admission to sufficient facts resulting from informal proceedings at the first tier of the District Court is valid in federal court for the purpose of sentence enhancement."  *Id.* at 563.  Judge Fuste then determined that guilty-filings constituted "a judicial determination of guilt."  *Id.* at 571.  Judge Fuste observed that Massachusetts law distinguished between "conviction" and "judgment": "a 'conviction' is an adjudication of guilt . . . [t]he 'judgment' is the sentence which the court may elect to impose after the state has moved for sentence."  *Id.* (citing Mass. Gen. L. ch. 279, §§ 1 and 1A).  Judge Fuste found support for this reading in *Lockwood* and *Pino v. Nicolls*, 119 F. Supp. 122 (D. Mass.), *aff'd*, 215 F.2d 237 (1st Cir. 1954), *rev'd*, *Pino*, 349 U.S. 901.  *Hines*, 802 F. Supp. at 571-72.

On appeal, the First Circuit vacated Mr. Tavares' conviction and remanded his case for new trial.  *United States v. Tavares*, 21 F.3d 1 (1st Cir. 1994) (en banc).  There was a second

---

[7] It is unlikely that Mr. Carey would be considered "convicted" under the second prong of § 1101(a)(48)(A) since he has never been punished within the meaning of the statute for the November 20, 2000 drug offense, since § 1101(a)(48)(A0(ii) requires "some form of punishment, penalty, or restraint upon the alien's liberty."  8 U.S.C. § 1101(a)(48)(A)(ii); *see Griffiths*, 243 F.3d  at 54.  But this conclusion depends upon the specific language of § 1001(a)(48)(A) and does not determine whether he has a prior conviction under the ACCA.

trial, and on March 30, 1995, Mr. Tavares was again found guilty. *See Tavares*, 93 F.3d at 11.

At the resentencing, Judge William Young focused on whether Mr. Tavares' first tier disposition

was sufficiently final to constitute a conviction, and he concluded that "the 'guilty-filed'

dispositions could not be counted as convictions under the ACCA." *Id.* at 13 n.3.[8]

### E.    *Commonwealth v. Simmons*

In 2007, the SJC considered the case of Paul Simmons. *Simmons*, 863 N.E.2d at 551. In

1981, Mr. Simmons pleaded guilty to thirteen indictments; he was sentenced on six and the rest

were "placed on file." *Id.* Approximately five years later, Mr. Simmons was arrested for a new

crime, and at his arraignment, one of the 1981 indictments was removed from the file and

brought before a different judge for sentencing. *Id.* He was sentenced to eighteen to twenty

years on the earlier-filed 1981 indictment. *Id.* at 552. Filing serial petitions for post-conviction

relief, Mr. Simmons repeatedly challenged his sentence and was successful on his fourth petition.

*Id.* at 552, 559.[9]

In *Simmons*, the SJC discussed Massachusetts' centuries-old practice of "guilty-filed"

dispositions and affirmed their use. In doing so, the SJC wrote the following footnote:

> We note that our jurisprudence commonly has referred to this practice as placing
> "convictions" on file. It is well established that a judgment of conviction does not
> enter unless sentence is imposed, *see Doe, Sex Offender Registry Bd. No. 1211 v.
> Sex Offender Registry Bd.*, 857 N.E.2d 473 (2006), and cases cited, meaning that
> the phrase "to place a conviction on file" is internally contradictory. Although
> this error in nomenclature is minor, we shall refer to the practice as placing the
> "case" or "indictment" on file.

*Id.* at 551 n.2 (first internal citation omitted).

---

[8] Judge Young did not issue a written sentencing order. The Court reviewed transcripts of the first two days of the three day hearing. The parties did not object to the Court's consideration of the transcripts. At resentencing, Judge Young concluded that there was sufficient evidence that Mr. Tavares had committed the prior crimes and he departed upward. *Tavares*, 93 F.3d at 10. Mr. Tavares faced a mandatory minimum term of fifteen years incarceration under the ACCA and received a ten year sentence by virtue of the decision to depart upward. *Id.* at 17. The First Circuit did not reach whether the "guilty-filed" dispositions qualified as predicate convictions under the ACCA but simply upheld the upward departure. *Id.*
[9] The reason Mr. Simmons was successful is unrelated to the issue before the Court.

## F.    *Simmons* **and the ACCA**

The Court follows the dictum in *Simmons* because it remains the clearest answer to the question before the Court: whether the commonwealth of Massachusetts deems a "guilty-filed" disposition to be a conviction.  It does not.  *Ambrose*, 252 F.3d at 497-98 (stating that when no state case law is directly on point, the district court's job is to "discern the rule the state's highest court would be most likely to follow under these circumstances").  There is little ambiguity in the meaning of footnote two: because "a judgment of conviction does not enter unless sentence is imposed," only a "case" or "indictment" can be filed, not a conviction.  *Id.*  The Government urges the Court to limit the footnote to mean only that a "judgment of conviction" requires sentence, but the SJC clearly goes further, stating that "'to place a conviction on file' is internally contradictory."  *Id.*

The Court identifies no reason to ignore *Simmons* or find it replaced by contrary legislative intent.  Although past SJC precedent suggests that a sentence is not required for conviction, *Lockwood*, 109 Mass. at 325, *Simmons* is the SJC's most recent pronouncement on the issue and is not the only case to state that "there is no *judgment of conviction* on a criminal charge unless a sentence is imposed."  *Doe, Sex Offender Registry Bd. No. 1211*, 857 N.E.2d at 479 n.5.  Prior case law from the First Circuit, including *Griffiths*, is generally consistent with *Simmons*, and although Judge Fuste disagreed in *Hines*, the opinion was issued without the benefit of *Simmons* and represented his best informed prophecy about what the SJC would do.[10]

Furthermore, in the footnote, the SJC draws a careful distinction between a conviction and a "guilty-filed" disposition and instructs on the more precise use of language.  To the extent prior decisions have semantically equated a "guilty-filed" disposition to a conviction, the SJC in

---

[10] In addition, although Judge Fuste relied on the district and circuit court opinions in *Pino*, the United States Supreme Court reversed those decisions.  *Pino*, 349 U.S. at 901.

*Simmons* corrected the inaccurate use of language. *Id.* (describing the SJC's common practice of referring to guilty-filings as convictions as in "error"). The Government relies on prior SJC case law that refers to guilty-filed dispositions as "convictions," but *Simmons* clarified and eclipsed prior SJC decisions. *Gov't's Mem*. at 9-11. Finally, in labeling the error in nomenclature "minor," the SJC was presumably addressing ramifications within the commonwealth of Massachusetts and not predicting what impact, if any, its clarification would have on federal criminal sentencing.

The Court recognizes that the Massachusetts Legislature at times distinguishes between "conviction" and "sentencing." *See*, *e.g*., Mass. Gen. L. ch. 279, § 1 (1998) (stating in part that "[w]hen a person convicted before a court is sentenced to imprisonment . . ."). The Court agrees that this statutory language supports the Government's position. But this statute was enacted before *Simmons* and in *Simmons* the SJC absolved the judiciary of its historically imprecise use of nomenclature. *Simmons*, 863 N.E.2d at 551 n.2 (stating that "this error in nomenclature is minor"). If the judiciary can be forgiven so can the Legislature.

Although Judge Fuste found such word use significant, his thoughtful opinion was written before *Simmons* and the then-existing common law definition appeared to also distinguish between "conviction" and "sentence." In other words, Judge Fuste did not reach the question of whether the Legislature's word use evinced sufficiently clear legislative intent to "effect a material change in or a repeal of the common law." *Cabral*, 819 N.E.2d at 957. Assuming that the distinction between conviction and judgment was valid in 1992 when *Hines* was authored, the SJC in *Simmons* invalidated it. *Simmons*, 863 N.E.2d at 551 n.2 (stating that "[i]t is well established that a judgment of conviction does not enter unless sentence is imposed").

The Government contends that guilty-filings count for purposes of Massachusetts state sentencing enhancements; if this were the case, there could be sufficient legislative intent to trump the common law understanding of conviction. *Jefferson*, 88 F.3d at 243 (holding that a state sentencing enhancement that counted guilty-filings as convictions indicated specific legislative intent and trumped the state common law definition of conviction). The Massachusetts state sentencing enhancements for gun offenses are contained in Mass. Gen. L. ch. 269, §§ 10G(a)-(c), specifying increasing minimum jail terms depending on the number of prior convictions. Only prior convictions "of a violent crime or of a serious drug offense" count and § 10G(e) gives "violent crime" the same meaning as set forth in Mass. Gen. L. ch. 140, § 121. Section 10G does not define "conviction" and does not state that its definition is governed by chapter 140, section 121. Although Mass. Gen. L. ch. 140, § 121 defines "conviction" as "a finding or verdict of guilt or a plea of guilty, whether or not final sentence is imposed," the definitions in chapter 140, section 121 only apply to "sections 122 to 131P." Massachusetts courts emphasize that the definition for "violent crime" is cross-referenced to chapter 140, section 121 whereas the definition for "conviction" is not. *See*, *e.g*., *Commonwealth v. Foreman*, 830 N.E.2d 219, 221-22 (Mass. App. Ct. 2005) (stating that "the licensing statutes are expressly subject to the definition of conviction in § 121. There is no similar constraint on use of the word in § 10G"). The Court is unaware of any Massachusetts court to use guilty-filings as a basis for imposing the state sentencing enhancement.

Furthermore, the Massachusetts Legislature has not excluded serious drug offenses from the "guilty-filed" procedure. The SJC observes that the Massachusetts Legislature "has delineated expressly crimes where the case may not be placed on file." *Simmons*, 863 N.E.2d at 556. Those crimes include causing serious bodily injury by recklessly or negligently operating a

vessel while under the influence of liquor or drugs; causing homicide by recklessly or negligently operating a vessel while under the influence of liquor or drugs; rape of a child; second or subsequent offense of stalking; unlawfully carrying a dangerous weapon, large capacity weapon, or large capacity feeding device therefor; unlawful sale of quantity of firearms; illegal sale of large capacity weapons; violations of firearms possession prohibitions by persons previously convicted of violent crimes or drug offenses; and deriving support from child prostitution. *Commonwealth v. Powell*, 901 N.E.2d 686, 690 n.7 (Mass. 2009). By not allowing the filing of guilty pleas to certain crimes, the Massachusetts Legislature appears to have concluded that these crimes are sufficiently serious to mandate conviction. It is noteworthy that possession to distribute cocaine and conspiracy to violate the controlled substances act, the two crimes that were "guilty-filed" in this case, are not on the list.

Finally, the Court recognizes that treating guilty-filings as convictions makes intuitive sense: why should Mr. Carey be allowed to plead guilty to a serious drug offense and not have the disposition count towards the ACCA? This question is particularly pointed because the Massachusetts courts have denied Mr. Carey's motions for new trials. *Gov't's Exs*. 3F, 4E, and 5F. However, having "discern[ed] the rule the state's highest court would be most likely to follow under these circumstances" and not having identified specific legislative intent to the contrary, the Court applies *Simmons* "even if [the Court's] independent judgment might differ." *Ambrose*, 252 F.3d at 497-98.

## III.  CONCLUSION

Since the commonwealth of Massachusetts does not consider guilty-filed dispositions to be convictions, the Court will not treat Levar Carey's guilty-filed dispositions as convictions for purposes of the ACCA.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 8th day of June, 2010